UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DYLAN MARTIN, on behalf of himself )
and all others similarly situated, )
 )
Plaintiff, )      No. 4:20-CV-1128 RLW
 )
v. )
 )
LINDENWOOD UNIVERSITY. )
 )
Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Lindenwood University's Rule 12(b)(6) Motion to Dismiss (ECF No. 8).  This matter is fully briefed and ready for disposition.  For the reasons discussed herein, the Court denies Lindenwood University's ("Lindenwood") Motion to Dismiss (ECF No. 8) Plaintiff Dylan Martin's ("Martin") claims for breach of contract and unjust enrichment for failure to state a claim.  The Court grants Lindenwood's Motion to Dismiss with respect to Martin's claim for conversion.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007)).  A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at

556). Several principles guide the Court in determining whether a complaint meets the plausibility standard. The court must take the plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. "This tenet does not apply, however, to legal conclusions or 'formulaic recitation of the elements of a cause of action'; such allegations may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). Rather, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## BACKGROUND

Martin purports to allege a class action lawsuit against Lindenwood "on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at Lindenwood, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ('COVID-19') pandemic, lost the benefit of the education for which they paid, and/or the services or facilities for which their fees were paid, without having their tuition and fees refunded to them." (Class Action Complaint ("Compl." or "Complaint"), ECF No. 1, ¶1).

Martin alleges that, during periods of normal operations, Lindenwood charges less for online course than for in-person courses. (Compl., ¶3). Due to the COVID-19 pandemic, Lindenwood provided only online coursework for the Spring 2020 semester after March 11, 2020. (Compl., ¶4). Martin alleges that

> [a]s a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Mr. Martin and the putative class contracted and paid for. The online learning options being offered to Lindenwood students are subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and

critique, including but not limited to the discontinuance of internships and clinical placements.

(Compl., ¶6).  Martin contends the online coursework is "in no way the equivalent of the in-person education that Plaintiff and the putative class members contracted and paid for." (Compl., ¶6).  Based upon the decision to mandate remote learning for the balance of the Spring 2020 semester, Martin alleges "Defendant's educational services have diminished in value significantly compared to the in-person education services that Defendant was providing prior to canceling in-person classes."  (Compl., ¶6).  Martin brings a putative class action for "a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided."  (Compl., ¶7).  Martin contends that, despite Lindenwood not having a choice to discontinue in-person classes, Lindenwood "has improperly retained funds for services that have diminished in value or are not being provided at all."  (Compl., ¶7).  Martin's Complaint alleges causes of action for Breach of Contract (Count I), Unjust Enrichment (Count II), and Conversion (Count III).

## DISCUSSION

### I.     Educational Malpractice Doctrine

"Generally, courts have refrained from recognizing educational malpractice claims, either in tort or contract, on the premise that '[u]niversities must be allowed the flexibility to manage themselves and correct their own mistakes.'" *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 8 (Mo. Ct. App. 2013) (alteration in original) (quoting *Miller v. Loyola Univ. of New Orleans*, 829 So.2d 1057, 1061 (La. Ct. App. 2002)). Missouri courts have "refuse[d] to recognize a claim for educational malpractice" because it is not the role of courts "to micromanage a university's daily operations." *Id.* (citing *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008) ("[C]ourts have refused to become the overseers of both the day-to-day

operation of [the] educational process as well as the formulation of its governing policies" (second alteration in original) (internal quotations omitted))). The Eighth Circuit likewise acknowledges that Missouri refuses to recognize claims for educational malpractice against educational institutions:

> In educational malpractice cases, a plaintiff sues his or her academic institution for tortiously failing to provide adequate educational services. If a negligence claim raises questions concerning the reasonableness of the educator's conduct in providing educational services, then the claim is one of educational malpractice. Similarly, if the claim requires an analysis of the quality of education received and in making that analysis the fact-finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct, then the claim is one of educational malpractice. If the duty alleged to have been breached is the duty to educate effectively, the claim is one of educational malpractice. A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice. Where the court is asked to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution, the claim is one of educational malpractice.

*Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034–35 (8th Cir. 2019) (quoting *Dallas Airmotive*, 277 S.W.3d at 700).  The educational malpractice doctrine, however, does not foreclose all causes of action between students and academic institutions. *Zagoria v. New York Univ.*, No. 20CIV3610GBDSLC, 2021 WL 1026511, at *3 (S.D.N.Y. Mar. 17, 2021). For example, "[w]hen the essence of the complaint moves beyond the effectiveness of education and into more specific promises for specified services, a student may be able to sue for breach of contract."  *Id*.

In this instant lawsuit, Martin frames his claims as that Lindenwood promised one thing -- an in-person experience for the entire spring 2020 semester -- but delivered another. *See* ECF No. 11 at 5 ("This [the educational malpractice doctrine] is simply not the law with respect to a university's commercial activities; here, selling an in-person, on-campus education to consumers.").  Martin alleges that Lindenwood charged more for in-person classes than for

online tuition.   (Compl., ¶¶17, 18 (citing https://www.lindenwood.edu/admissions/student-financial-services/tuition-and-fees-2019-2020 and https://online.lindenwood.edu/programs (for various online programs)).   Martin claims that his causes of action relate to only these different forms and prices of education and do "not request any analysis where 'the trier of fact would have to inquire into the nuances of educational processes and theories in order to determine whether the alleged representations were false.'" (ECF No. 11 at 10 (citing *Soueidan v. Saint Louis Univ.*, No. 4:17-CV-2777RLW, 2018 WL 1997287, at *3 (E.D. Mo. Apr. 27, 2018), *aff'd sub nom. Soueidan v. St. Louis Univ.*, 926 F.3d 1029 (8th Cir. 2019)).   Martin maintains that Lindenwood charges one amount for online education and another amount for "[f]ull-time undergraduate in-person tuition." (ECF No. 11 at 11 (quoting Compl., ¶17, n.3).[1]

In response, Lindenwood argues that Martin's causes of action must be dismissed because its website does not differentiate between the cost of in-person and online learning. (ECF No. 13 at 4-5) ("Here, the link that Plaintiff invokes says ***nothing*** about "in-person" tuition or education, and instead discusses 'full-time undergraduate semester tuition.'")(emphasis in original).[2]   Lindenwood states that its website provides pricing for "full-time undergraduate semester tuition" and "part-time undergraduate tuition."

The Court finds that Lindenwood's website appears to offer online programs that are at a different price point than the full-time and part-time semester tuition programs. *See*

---

[1] This Court may consider exhibits attached to the Complaint, documents that are necessarily embraced by the pleadings, and public records. *Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008).

[2]   The Court notes that Plaintiff and Defendant cite to the link: https://www.lindenwood.edu/admissions/student-financial-services/tuition-and-fees-2019-2020/. *See* Compl., ¶17, n.3; ECF No. 13 at 5, n.1. That specific link, however, is no longer available and the parties did not provide a printed version of that link.

https://online.lindenwood.edu/programs/.[3]  Based upon the website and Martin's allegations, Lindenwood appears to place a cost difference between in-person and online learning.  Thus, the Court finds that Martin has alleged a cost difference between in-person and online learning, which would not necessarily invoke the educational malpractice doctrine.  *Cf. Soueidan*, 926 F.3d at 1034–35 ("A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice.").

In addition, Lindenwood further contends that this action must be dismissed because Martin's allegations of a sub-par education cannot be ignored by this Court.   Rather, Lindenwood claims the breach and damages allegedly suffered by the mandatory transition from in-person to remote learning necessarily implicates the educational malpractice doctrine. *See* Compl., ¶26 ("The remote learning options are in no way the equivalent of the in-person education that Plaintiff and the putative class members contracted and paid for.").  Lindenwood argues that Martin's Complaint requires the Court to make impermissible qualitative comparisons between in-person and online programs that are barred by the educational malpractice doctrine.  A similar decision reached by the Northern District of Illinois:

> Plaintiffs attempt to avoid this flaw by arguing that they are not challenging the quality of their education, but rather alleging that defendant failed to perform the educational service "at all."  Plaintiffs' argument is contradicted by the text of the FAC, which states that plaintiffs received online instruction and course credits, and repeatedly claims that the online instruction was "worth less" than the traditional in-person instruction. The FAC clearly challenges the quality of the online instruction, not whether defendant provided education "at all." Consequently, the court concludes that plaintiffs' claims are the type of educational malpractice claims that Illinois courts, and courts throughout the country, have rejected.

---

[3] For example, https://online.lindenwood.edu/programs/bachelors-art-design/ ($475 per credit); https://online.lindenwood.edu/programs/bachelors-art-history/ ($475 per credit); https://online.lindenwood.edu/programs/bachelors-criminal-justice/ ($475 per credit); https://online.lindenwood.edu/programs/bachelors-game-design/ ($475 per credit) (last visited 7/12/21).

*Gociman v. Loyola Univ. of Chicago*, No. 20 C 3116, 2021 WL 243573, at *3 (N.D. Ill. Jan. 25, 2021); *see also Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212, at *7 (C.D. Cal. Dec. 11, 2020) (dismissing case based upon the educational malpractice doctrine where the plaintiff alleged the education she received was not "worth the amount charged" or "in [any] way the equivalent of [an] in-person education," the programs were "sub-par," and that online classes lacked "collaborative learning and ... dialogue, feedback, and critique" because "the resolution of Plaintiffs' claims would require the Court to make judgments about the quality and value of the education that Occidental provided in the Spring 2020 semester").

The Court holds that Martin's Complaint is not barred by the educational malpractice doctrine. Martin alleges the tuition and fees for in-person instruction at Lindenwood are higher than tuition and fees for online courses because such costs over not just the academic instruction, but encompasses "an entirely different experience" including: in-person interaction with professors, mentors and peers; access to libraries, laboratories, computer labs, and study room; student government and student unions; extra-curricular activities; student art and cultures; social development and independence; hands-on learning and experimentation; and networking and mentorship opportunities. (Compl., ¶26). Rather, the Court finds that Martin's allegations that the education he received was "substandard" does not necessarily require the Court's to examine Lindenwood's pedagogical practices and instruction during the Spring 2020 semester. Instead, at this early stage, the Court holds Martin's allegations that he received an entirely different educational experience are sufficient.

Indeed, several courts have found that, despite these allegations of "sub-par" education, the complaints did not invoke the educational malpractice doctrine. For example, in a COVID-19 tuition refund dispute, the plaintiff alleged that Fordham's remote instruction and educational

opportunities were "subpar in practically every aspect," "in no way the equivalent of [an] in-person education," "a shadow of what they once were," and "not even remotely worth the amount charged class members for Spring Semester 2020 tuition." *Hassan v. Fordham Univ.*, No. 20-CV-3265 (KMW), 2021 WL 293255, at *3 (S.D.N.Y. Jan. 28, 2021).[4]   The *Hassan* Court, however, found that these allegations "primarily would impact the damages element of Plaintiff's contract claim" and did not "form the 'essence' of the Complaint, such that Plaintiff's claims should be barred entirely at this stage."  *Hassan*, 2021 WL 293255, at *4; *Durbeck v. Suffolk Univ.*, No. CV 20-10985-WGY, 2021 WL 2582621, at *5 (D. Mass. June 23, 2021) ("Thus the 'essence' of this action is not that Suffolk 'failed to perform adequately a promised educational service' when it delivered a virtual experience, but rather that Suffolk failed to deliver the promised in-person experience entirely in the second half of the spring 2020 semester.").   Similarly, the Court finds that Martin's primary allegation is that he was promised an in-person college experience, and paid tuition and fees commensurate with that promise, but was afforded an online experience that Lindenwood itself valued as less.

Thus, the Court recognizes, as several other courts have, that Martin's damages may be intertwined with the determination of whether the remote education provided to Martin and the putative class was equivalent to the in-person instruction allegedly promised.[5]  At this early stage

---

[4] The *Hassan* case was filed by the same law firm representing Martin in this action.

[5] *See Durbeck*, 2021 WL 2582621, at *5 ("The issue of damages, however, gives this Court pause."); *Metzner v. Quinnipiac Univ.*, No. 3:20-CV-00784 (KAD), 2021 WL 1146922, at *8 (D. Conn. Mar. 25, 2021) ("However, if in the future it becomes manifest that resolving Plaintiffs' claims or assessing their damages will ultimately entail[ ] evaluation of whether a course conducted remotely was less valuable than one conducted in person—and if so, by how much— the Court [will reassess whether it] should decline to enter the classroom and determine whether or not the judgments and conduct of professional educators were deficient.")(internal quotation omitted); *Hassan*, 2021 WL 293255, at *4 (quoting *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89, 454 N.Y.S.2d 868, 871 (1982)) ("To the extent that adjudicating Plaintiff's claims entails evaluation of whether a course conducted remotely was less valuable than one conducted in

of the litigation, however, that issue is not before the Court.  The Court finds that Martin's current allegations thread the needle and state a claim for relief for breach of contract and unjust enrichment, even under Missouri's educational malpractice jurisprudence.  As a result, the Court denies Lindenwood's Motion to Dismiss this action for failure to state a claim based upon the educational malpractice doctrine.

## II.    Count I Breach of Contract

"In Missouri, '[a] breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 994 (8th Cir. 2018) (quoting *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)).  "In order to make a submissible case of breach of contract, the complaining party must establish the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach." *C. Am. Health Sciences Univ., Belize Med. College v. Norouzian,* 236 S.W.3d 69, 84 (Mo. Ct. App. 2007) (internal citation omitted). Missouri law, therefore, requires a plaintiff to identify which rights or obligations the school breached under the contract in order to establish a claim for breach of contract. *Lucero*, 400 S.W.3d at 5.

Lindenwood contends that Martin has failed to identify a specific promise for in-person instruction.  *See also Gociman*, 2021 WL 243573, at *3-4 ("Plaintiffs' breach of contract claim fails for a second reason: plaintiffs have failed to allege a specific promise for in-person instruction. . . . They ask the court to infer that the difference in tuitions and fees reflects a

_____

person—and if so, by how much—the Court should decline to 'enter the classroom and determine whether or not the judgments and conduct of professional educators were deficient.'").

guaranteed right to on-campus services and 'face-to-face, live instruction.' The court will not make this inference."); *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) ("Although Plaintiffs argue that Occidental promised to provide in-person instruction in its contract with Chloe and other Occidental students in exchange for paying tuition and fees, Plaintiffs have failed to identify any specific language in the 2019-2020 Catalog or any other publication from Occidental that promises in-person instruction."); *Chong v. Ne. Univ.*, 494 F. Supp. 3d 24, 28 (D. Mass. 2020) ("Northeastern argues that plaintiffs fail to state a claim because they have not plausibly established that the parties' agreement included a right to in-person instruction. The court agrees."); *cf. Goldberg v. Pace Univ.*, No. 20 CIV. 3665 (PAE), 2021 WL 1565352, at *6 (S.D.N.Y. Apr. 21, 2021) (denying a motion to dismiss the complaint where "Pace allegedly made specific promises to students in Goldberg's program that instruction would be in person, including the third-year Rep-Season and 'Process Lab,' and that Goldberg paid Pace tuition and fees in exchange for specific in-person experiences and services. . . . Goldberg paid Pace tuition and fees in exchange for specific in-person experiences and services.").  Lindenwood further notes that "Missouri courts have not recognized any implied contract between students and universities."  ECF No. 13 at 7 (citing *Rice v. St. Louis Univ.*, No. 4:19-CV-03166 SEP, 2020 WL 3000431, at *5 (E.D. Mo. June 4, 2020) (citing *Lucero*, 400 S.W.3d at 4-5)).  Lindenwood contends Martin has presented only a "subjective belief that he contracted for an in-person education" without any identified contractual terms.  (ECF No. 13 at 9).  Lindenwood argues that the promises related to in-person education outlined by Martin do not constitute contractual obligations, but are merely "aspirational in nature."  (ECF No. 13 at 10 (citing *Soueidan*, 926 F.3d at 1035).

The Court holds, however, that Lindenwood's promise of in-person learning alleged by Martin sufficiently states a claim for breach of contract. The "merely aspirational" statements in *Soueidan* differ from the promises in this case.  In *Soueidan*, the Eighth Circuit focused on the Handbook's statement that "[y]ou *should* have an advisor assigned within the first few weeks of classes starting,"  *Id*.  The Eighth Circuit noted that the "Handbook fail[ed] to specify *who* assigns the advisor, but it also uses the term 'should,' not 'must' or 'shall.'"  *Id.*  As a result, the Eighth Circuit held that such statements provided in these sources are "aspirational in nature" and could not support a breach of contract claim.  *Id.* at 6.

Here, the Court finds that Martin sufficiently alleges a breach of contract claim, identifying specific contractual promises made to in-person students such as Martin.  Martin alleges, "Defendant markets the Lindenwood on-campus experience as a benefit of enrollment on Lindenwood's website and in their 'admissions viewbook,' stating that ' you will enjoy a beautiful and expansive campus' that has 'everything you need to succeed right outside your door.'"  (Compl., ¶24).  Martin alleges ""[t]he tuition and fees for in-person tuition are higher than tuition and fees for online courses because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to . . . [i]n person interaction with professors, mentors, and peers" *id*., ¶26, "[a]ccess to facilities such as libraries, laboratories, computer labs, and study room" *id*.; "[s]tudent governance and student unions" *id*.; "[e]xtra-curricular activities, groups, intramural sports, etc." *id*.; "[s]tudent art, cultures, and other activities" *id*.; "[s]ocial development and independence" *id*.; "[h]ands-on learning and experimentation" *id*.; "[n]etworking and mentorship opportunities." *Id*.  At this early stage of the litigation, the Court holds that Martin alleges that Lindenwood's publications, "marketing, pricing, agreements, policies, and established course of conduct" created an

expectation that he was paying for an in-person college experience.  (Compl., ¶¶17-18, 37-44). Notably, Martin alleges he signed up for and paid for a full-semester tuition, not the on-line pricing option.  Based upon the foregoing, the Court holds that Martin alleges Lindenwood promised an in-person education.[6] Therefore, the Court denies Lindenwood's Motion to Dismiss Martin's breach of contract claim.

### III.    Count II Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege (1) a benefit was conferred upon the defendant, (2) at the expense of the plaintiff, and (3) it would be unjust to allow the defendant to retain the benefit. *Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1350 (E.D. Mo. 2020) (citing *Federated Mut. Ins. Co. v. Peery's Auto Parts, L.L.C.*, 2012 WL 3062720, at *2 (W.D. Mo. July 26, 2012)). Both parties agree that Martin has alleged the first two prongs of an unjust enrichment claim.  Therefore, the only issue is whether it would be unjust to allow Lindenwood to retain the benefit.  (ECF No. 11 at 12; ECF No. 13 at 11).

Martin contends that Lindenwood's retention of his tuition funds was unjust because Lindenwood failed to provide an in-person educational experience.  (ECF No. 13-14 (citing Compl., ¶¶ 47-49).  Martin alleges that the retention of his tuition was unjust, "especially in light of Defendant's higher prices for in-person coursework."  (ECF No. 11 at 12-13 (citing Compl., ¶ 17-18, 49-50)).  Martin further contends that Lindenwood's retention of the funds was inequitable considering Lindenwood's "reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, etc."  (ECF No. 11 at 14).

---

[6] In the briefing, the parties do not address Martin's claim for the fees in the Complaint.  The fees, however, present another troublesome allegation for the Court, which precludes judgment as a matter of law.  For example, certain fees, such as lab or residential fees, would seem to be an easily discernable part of the contract between the parties, which allegedly was not fulfilled.

Finally, Martin notes that Lindenwood received "a significant bailout from the Federal Government under the CARES Act" while students continued incurring debt to pay for college. (ECF No. 11 at 14).

In response, Lindenwood contends that Martin has not alleged "more than passive acquiescence, such as fault or undue advantage on the part of the defendant" that would make Lindenwood's "retention of the benefit" unjust. (ECF No. 13 at 11 (citing *Aughenbaugh v. Williams*, 569 S.W.3d 514, 527 (Mo. Ct. App. 2018)).  Lindenwood notes that Martin has not pleaded an unjust retention of funds in the Complaint, nor has he identified "any fault or undue advantage on Lindenwood's part, particularly when Plaintiff has not alleged that the tuition and fees Lindenwood collected were used for any other reason than to continue providing Plaintiff educational services."  (ECF No. 13 at 12).

The Court concludes that Martin states a claim for unjust enrichment based upon his pleading.  The Court finds that Martin's allegation that Lindenwood's "retention [of his tuition payment and fees] was unjust under the circumstances" (Compl., ¶ 49) is sufficient to withstand the Motion to Dismiss because "a motion to dismiss tests the sufficiency of the pleading, not the merits of the case." *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1160 (S.D. Fla. 2020) (denying defendant's motion to dismiss plaintiff's unjust enrichment claim); *In re Bos. Univ. COVID-19 Refund Litig.*, No. CV 20-10827-RGS, 2021 WL 66443, at *3 (D. Mass. Jan. 7, 2021) ("Because the court cannot say, as a matter of law, that no reasonable juror taking these allegations as true could determine that BU's failure to refund tuition and fees was unjust under the circumstances, the court declines to dismiss the portions of Count III premised on the failure to provide in-person instruction or access to on-campus facilities and resources."); *Metzner v. Quinnipiac Univ.*, No. 3:20-CV-00784 (KAD), 2021 WL 1146922, at *11 (D. Conn. Mar. 25,

2021) ("It can be reasonably inferred from these allegations that Quinnipiac accrued excess funds by moving its courses online, and the question of whether the institution was unjustly enriched by retaining the Plaintiffs' tuition—which allegedly encompassed the costs of delivering in-person instruction and all of the attendant benefits that flow from it—is a question improper for resolution on a motion to dismiss.").  Therefore, the Court denies Lindenwood's Motion to Dismiss Martin's unjust enrichment claim.

### IV.    Count III Conversion

"Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 523 (Mo. banc 1988); *Missouri Ozarks Radio, Network, Inc. v. Baugh*, 598 S.W.3d 154, 160 (Mo. Ct. App. 2020). To prove conversion, a plaintiff must establish the following three elements: "(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." *JEP Enters., Inc. v. Wehrenberg, Inc.*, 42 S.W.3d 773, 776 (Mo. Ct. App. 2001); *Mackey v. Goslee*, 244 S.W.3d 261, 264 (Mo. Ct. App. 2008); *Missouri Ozarks Radio, Network, Inc.*, 598 S.W.3d at 160–61.

Martin contends he has identified a specific chattel: "the tuition and fee monies [he] paid defendant in exchange for in-person educational servicers." (ECF No. 11 at 14 (citing Compl., ¶ 55)).  Martin maintains that his conversion claim falls within the exception to the rule that money cannot be described or identified as a specific chattel. (ECF No. 11 at 14).  *See  In re Est. of Boatright*, 88 S.W.3d 500, 506 (Mo. Ct. App. 2002);  *Dayton Const., Inc. v. Meinhardt,* 882 S.W.2d 206, 208 (Mo.App.1994) ("As a general rule a claim for money may not be in conversion because conversion lies only for a specific chattel which has been wrongfully

converted."); *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. 1981) (citing *Coleman v. Pioneer Studebaker, Inc.*, 403 S.W.2d 948 (Mo.App.1966); *Franta v. Hodge*, 302 S.W.2d 291 (Mo.App.1957); *Scott v. Twin City State Bank*, 537 S.W.2d 641, 644-645(9) (Mo.App.1976)) ("the rule is otherwise as to funds placed in the custody of another for a specific purpose and their diversion for other than such specified purpose subjects the holder to liability in conversion").  Martin asserts he "identified the specific sums of money that were converted, namely the tuition and fees he paid for the Spring 2020 semester, and the specific purpose for which they were delivered: the provision of an in-person educational experience."  (ECF No. 11 at 15 (citing Compl., ¶¶ 53-57)).  Martin contends Lindenwood improperly diverted his tuition and fees away from his in-person educational experience and instead utilized the monies for online education.  (ECF No. 11 at 15).

"Conversion is not the appropriate action when the claim is solely for the recovery of money." *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015) (citing *Capitol Indem. Corp. v. Citizens Nat'l Bank of Ft. Scott, N.A.*, 8 S.W.3d 893, 900 (Mo. Ct. App. 2000) (citing *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. banc 1981)).  Here, Martin alleges he paid tuition.  Nowhere in Martin's Complaint does he allege that his tuition funds were "a specific fund to be held for a specific purpose."  *Ottawa Charter Bus Serv., Inc. v. Mollet*, 790 S.W.2d 480, 484 (Mo. Ct. App. 1990); Compl., ¶¶ 51-58. Rather, Martin merely "demands the return of the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided or diminished in value since Lindenwood shut down." (Compl., ¶ 55).  *See Hassan*, 2021 WL 293255, at *11–12 (quoting *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406 (N.D.N.Y. 2020)(dismissing conversion claim where "Plaintiff cannot identify a comparably 'specific, identifiable' fund and 'cannot realistically argue that once that money was

paid to defendant it remained intact, as opposed to pooling in with defendant's other funding.'"); *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 999 (N.D. Cal. 2020) ("An obligation to pay money, like Plaintiff's claim for partial tuition reimbursement, is insufficiently tangible to qualify as property under these facts."); *Metzner*, 2021 WL 1146922, at *12 ("Plaintiffs also misapprehend the requirement that the funds be identified with "specificity" when they insist that they have adequately pled conversion by identifying the amount that Quinnipiac charged Plaintiffs for its tuition and fees. The issue is not whether the funds are "specific" in a quantifiable sense but whether they are traceable to Plaintiffs so as to sustain a specific property interest at the time that the funds were held by Quinnipiac."). Martin has not sufficiently pleaded the elements of conversion, and this claim is dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Lindenwood University's Rule 12(B)(6) Motion to Dismiss (ECF No. 8) is **GRANTED**, in part, and **DENIED**, in part.  Lindenwood University's Motion to Dismiss Plaintiff's Complaint is **GRANTED** as to Count III for Conversion.  Lindenwood's Motion to Dismiss Plaintiff's Complaint is **DENIED** in all other respects.

Dated this 21st day of July, 2021.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**